UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

RONNIE J. THORNTON                    CIVIL ACTION

VERSUS                                  NO.    07-1839

DIAMOND OFFSHORE DRILLING, INC.     SECTION:   R-1

                                         JURY TRIAL REQUESTED

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

<u>OPPOSITION TO MOTION FOR NEW TRIAL</u>

**MAY IT PLEASE THE COURT:**

Defendants Diamond Offshore Management Company and Diamond Offshore Services Company (Diamond) have moved for a new trial or, alternatively, for remittitur under Fed. R. Civ. Proc. 59. With respect, there is no basis in fact for defendants' various positions. The four-day jury trial was free of genuine appealable issues. Indeed, evidence, jury charges and jury interrogatories were submitted without objection; opening statements and closing arguments were free of objections; and, there were very few objections during witness testimony, none of which were consequential. Nothing said or done engendered passion, prejudice or improper juror behavior.

As to the jury verdict, the decision was unanimous and wholly consistent with the evidence. The overwhelming evidence supported a finding of negligence under the Jones Act, 46 U.S.C.

§30104, et seq. and the unseaworthiness of the J/U OCEAN DRAKE.  The jury assessed ten (10%) percent fault to the plaintiff despite, not due to the evidence.

The jury did award twice the general damages figure that was requested at trial.  However, there is absolutely no indication that this was based on any improper influence by passion or prejudice. Given the mechanism of injury and damages testimony, the figure should not shock the judicial conscience of the court.  It is not excessive under the facts of this case.

As to special damages, the jury simply chose to adopt the testimony of plaintiff's economic loss expert, Robert Hebert, Ph.D., rather than defendants' expert, Kenneth Boudreaux, Ph.D.  The jury's agreement with Dr. Hebert's total vocational disability loss figure is supported by the testimony of plaintiff's vocational rehabilitation expert, Ms. Nancy Favaloro.  The jury clearly sided with Ms. Favaloro rather than defendants' vocational rehabilitation expert, Todd Capielano.  This is not grounds for a new trial.

Plaintiff will address defendants' arguments in turn.

## LAW

Under FRCP 59(a) a motion for a new trial in a jury case may be granted "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States."  The decision to grant or deny the motion is within the trial court's sound discretion and is not subject to review absent abuse of discretion.  *Young v. City of New Orleans*, 751 F.2d 794, 798 (5th Cir. 1985).  Importantly, there is no abuse of discretion denying a motion for new trial unless there is a **complete absence of evidence to support the verdict**.  *Vogler v. Blackmore*, 325 F.3d 150, 154 (5th Cir. 2003).

The U. S. Fifth Circuit has identified the following grounds upon which a court may grant

a new trial:

> (1)     The verdict is against the great weight of the evidence;
>
> (2)     the damages awarded are excessive or inadequate;
>
> (3)     the trial was unfair; or,
>
> (4)      prejudicial error was committed during the course of the trial.

*Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985).

In conducting its analysis, the trial court must accord **great difference to jury findings**, and courts should disturb the jury's award only when it **shocks the judicial conscience,** is the result of **bias, passion, prejudice, corruption, or other improper motive**, is **contrary to right reason,** or is **entirely disproportionate to the injuries sustained.** *Wood v. Diamond M Drilling Co.*, 691 F.2d 1165, 1168 (5th Cir. 1982).

A.      **New trial on liability not warranted.**

Of the four grounds for new trial, only no. (1) is potentially implicated here.  However, it is clearly inapplicable.  The jury heard from a number of defendants' rig employees and the plaintiff. Every rig employee stated that the hydraulic winch was malfunctioning prior to and at the time of the incident in suit.  Floorhand Tyler Pittman testified that he put his hand into the wrench and bumped the spin lever on numerous occasions just as plaintiff did when the incident occurred. Plaintiff's immediate supervisor, driller Johnny Williamson, testified that plaintiff did nothing wrong to cause the incident.  Defendants' own post-incident analysis did not cast any blame whatsoever on plaintiff.  Defendants' safety superintendent Timothy Taylor testified at trial that he did not blame plaintiff, either.

In short, defendants knowingly provided Mr. Thornton with a broken wrench, forced him to

repair the wrench during drilling operations, failed to train him on how to fix the wrench and then blamed him for getting hurt while trying to fix it. Plaintiff's behavior is measured under the case of *Gautreaux v. Scurlock Marine*, 107 F.3d 331 (5th Cir. 1997), which requires this Jones Act seaman to act as a like seaman of the same training and experience under similar circumstances. Mr. Thornton did just that; he acted as he and others aboard the J/U OCEAN DRAKE, including those in higher positions and with more experience, had acted for months leading up to the incident. He acted reasonably under the circumstances then existing on the rig.

The jury was generous to Diamond in assigning plaintiff ten (10%) percent fault. There is overwhelming evidence supporting a finding of no comparative fault. Defendants' request for a new trial on liability has no basis in the trial record or under applicable law. It should be denied.

**B.     New trial on general damages not warranted.**

When a jury verdict results from passion or prejudice, a new trial is the proper remedy. When a damage award is merely excessive or so large as to appear contrary to right reason, remittitur is the appropriate remedy. *Laxton v. Gap, Inc.*, 333 F.3d 572, 586 (5th Cir. 2003). The jury's assessment of damages, however, is heavily weighted against judicial reconsideration. A court will not reverse a jury verdict as excessive except on the strongest of showings that the award was completely disproportionate to the injury sustained by the plaintiffs. *Caldarera v. Eastern Airlines, Inc.*, 705 F.2d 778, 784 (5th Cir. 1983). Like a new trial, remittitur is appropriate only when the inconsistency between injury and award is so vast as to "shock the judicial conscience, . . . be contrary to right reason, . . . or indicate bias, passion, corruption or other improper motive. . . ." 705 F.2d at 784. (See page 7, section 3 herein.)

Diamond argues that the jury verdict resulted from passion or prejudice based on the fact that

the award was double that suggested by the undersigned in closing argument.  Diamond fails to consider the following facts:

1.     Ronnie Thornton functions at a fifth grade level and was able to rise above his intellectual limitations solely because of his strength and ability to perform heavy manual labor.

2.     His worth as a person, husband and father, and his self-esteem were inexorably tied to his career and earnings as an offshore oilfield worker.

3.     His injury was gruesome and excruciatingly painful. Indeed, he was still in too much pain to discuss the accident with Diamond safety supervisor Timothy Taylor even after pain medications had been administered at the hospital.

4.     Mr. Thornton underwent eight (8) surgical procedures:

(a)     4/8/06—fasciotomy of the forearm and hand; carpal tunnel release

(b)     4/8/06—debridement of open fracture left radius, volar fasciotomy left forearm, open reduction and internal fixation left radial shaft and pinning of the carpal-metacarpal joint dislocation in the thumb.

(c)     4/10/06—dressing change and secondary closure, 25 cm. of the volar skin.

(d)     4/12/06—dressing change, partial closure approximately 25 cm. of open wounds from fasciotomy.

(e)     4/14/06—rotation flap of the arm approximately 10 cm. to cover exposed tendons of the distal forearm, surgical preparation and creation of recipient site, acellular dermal replacement.

(f)     4/18/06—dressing change, re-application of VAC and splint application.

(g)     5/4/06—removal of celastric sheeting over integra,

full-thickness graft from thigh to left forearm.

(h)     6/14/06—removal of pins from the CMC joint of the thumb and open reduction and placement of pins in the MCP joint of the thumb.

Thereafter, as testified to by Mr. and Mrs. Thornton, plaintiff traveled 140 miles round trip to Mobile, AL approximately 100 times for physical therapy, or 14,000 miles total.  The sessions were physically painful, mentally difficult and exhausting.

Throughout this time, Mr. Thornton sought treatment for depression.  Family physician Dr. Scott Tynes placed him on antidepressive medication that he will take for the remainder of his life. The source of his depression is obvious.  As Mr. Thornton stated and demonstrated, he requires help with his basic needs like buttoning his shirt, tying his shoes, handling coins and small objects and other daily chores that are taken for granted.  He will require assistance every day for the rest of his life due to the permanent physical disability to his forearm and hand.

Additionally, Mr. Thornton will see and feel the extensive scarring and disfigurement to his left arm for the rest of his life.  This is an injury about which he will be reminded every waking hour. These points were made to the jury by Mr. and Mrs. Thornton in compelling testimony, as was Mr. Thornton's overwhelming concern for the financial stability of his family and his ability to successfully send his two daughters to college.

Mr. Thornton lost not only any meaningful use of his left upper extremity. He was left with a horribly scarred and disfigured forearm and hand.  He lost his self-respect.  He feared that he could no longer send his girls to college and therefore not fulfill the promise he made to his wife to provide his kids with a better life.  This proud man endured and continues to endure psychic pain that was equal to if not more serious, intense and long-lasting than his physical pain.

The jury assessed all of this information and decided that the undersigned's general damage suggestion was too low.  There is absolutely no indication that this decision was based on passion, prejudice or any other improper motive.  Both sides tried the case professionally and well within the rules.  The jury simply deliberated and concluded that the totality of Mr. Thornton's pain and suffering required a $2.5 million general damages award to place him back in the position he would have been in but for this tragedy.  The jury answers this question, not the lawyers trying the case.

Under the circumstances, there is simply no reason to grant a new trial on damages.

## C.   **Remittitur unnecessary.**

When analyzing whether a remittitur is appropriate, the U. S. Fifth Circuit has endorsed two methods for evaluating the priority of a jury award:  (1)  The maximum recovery rule, and (2) the clearly excessive rule.  *Campbell v. England*, 2005 WL 1400465 (E.D. La.), revd on other grounds, 2007 WL 1454542 (5th Cir.)  Under the maximum recovery rule, when the jury's award is excessive, the court should reduce the verdict to the maximum amount the jury could properly have awarded.  *Dixon v. International Harvester Co.*, 754 F.2d 573, 590 (5th Cir. 1985).  The maximum amount is determined by comparing the award under scrutiny to awards in other cases for similar injuries.  *Id.*  A fifty (50%) percent multiplier is then applied to arrive at the maximum recovery amount in jury trial cases.  *Salinas v. O'Neill*, 286 F.3d 827, 830 (5th Cir. 2002).  The district court then suggests that plaintiff accept the remitted amount.  If plaintiff declines, he is entitled to a new trial on damages alone.  754 F.2d at 590.

Under the clearly excessive rule, the court does not determine excessiveness of damages awards by comparing verdicts in similar cases, but rather reviews each case on its own facts.  *Johnson v. Offshore Express, Inc.*, 845 F.2d 1347, 1356 (5th Cir. 1988).  This approach recognizes

the limitations of simply looking at prior awards.  As the U. S. Fifth Circuit has stated:

> We recognize . . . that an examination of such prior awards is of
> limited use in assessing the particular damages suffered by these
> particular claimants under these particular circumstances.  However,
> . . . prior awards may be of some aid in determining excessiveness
> when the present award is shown to be greatly disproportionate to
> past awards . . . for . . . similar injuries

*Haley v. Pan American World Airways*, 746 F.2d 311, 318 (5th Cir. 1984).

Given this somewhat contradictory jurisprudence, plaintiff respectfully suggests that the proper

analysis requires evaluation of this matter on its own specific facts, viewing the medical and general

damages testimony in the light most favorable to plaintiff, against the background of similar cases

brought in the U. S. Fifth Circuit.[1]

The lynchpin of defendants' argument regarding remittitur is that the plaintiff achieved an

"outstanding" result medically, can function in the light-medium to medium-heavy physical demand

category, and that he is not restricted from working according to physician testimony.  This ignores

defendants' own expert, IME physician Dr. Christopher Cenac, who testified that the physician's role

is to assess limitations and provide this information to the vocational rehabilitation professionals

who then determine the availability and propriety of jobs.  The fact that the physicians testified that

plaintiff is not restricted from working is helpful but not outcome determinative.

Plaintiff's vocational rehabilitation expert, Nancy Favaloro, had the benefit of both functional

capacity evaluations when she testified, by video deposition, as follows:

> Q.    So as of today, as of the day we are taking your
>        deposition, just before trial, do you feel like it is

---

[1]        The relevant jurisdiction is the U. S. Fifth Circuit generally and Jones Act cases
brought in the United States District Court for the Eastern District of Louisiana in particular.
[See: *Theodile v. Delmar Systems, Inc., et al*, 2007 WL 2491808 (E.D. La. 8/31/07).

realistic to expect Mr. Thornton to find a job eight hours a day, 40 hours a week within 40 miles of his home, any job, given his education, work history, the crush injury to his hand and the disabilities that he is suffering?

A.   I think there are some jobs that he can do. I think that they are going to be difficult to find, because the movement in that area is just very slow. Dr. Tynes is treating him and a psychologist evaluated him that noted that he is taking medication for depression. They talk about that they thought from a medical standpoint his ability to concentrate to task would be affected negatively.

And if someone cannot attend to tasks they are usually not successful. They might be successful in getting a job, **but usually not in keeping that job**.

Deposition of Nancy Favaloro, p. 25, ln 20 through p. 26, ln 15.

This jury was told by Diamond's own physician witness that it must rely on the vocational rehabilitation testimony to determine vocational capabilities. The jury properly adopted Ms. Favaloro's opinion that, given Ronnie Thornton's age, academic capabilities, work history and the unreasonable geographic distance from his home to any potential job, Mr. Thornton "might be successful in getting a job but usually not in keeping that job." He is totally disabled.

The above information highlights why it is so very important to view each case on its own facts. Mr. Thornton's situation cannot simply be pigeonholed into other prior cases. He suffered a unique physical injury that is compounded by his depression, both of which factor into the general damage award. While other cases provide a frame of reference, they simply do not define the parameters of an appropriate general damage award in this case.

Against this background, plaintiff has found the following cases which offer some guidance:

1.    *May v. Global Santa Fe Drilling, et al,* **2007 WL 2728482 (E.D. La.).**

Plaintiff May was injured because a defective snub line on spinner hawks on the drillfloor on the J/U HIGH ISLAND II was negligently replaced.  May was hurt when he was struck on the right shoulder and neck by the spinner hawks during rig operations.  He first complained of headaches and shooting pain down his right shoulder which later developed into reflex sympatric dystrophy of the right upper extremity.  The condition caused permanent pain and weakness and totally disabled Mr. May from offshore work.  The jury awarded the plaintiff $1,250,000 in past and future pain and suffering.  Applying the 50% multiplier to the *May* verdict brings the general damage award to $1,875,000.   Judge Lemmon denied the defendant's post trial motion for relief from this award. (Defendant's Motion for New Trial found at 2007 WL 4535410; Plaintiff's Opposition found at 2007 WL 4535411.)

2.    *Theriot v. Jen Marine, LLC, et al*, **2006 WL 3055922 (E.D. La. 9/6/06).**

Plaintiff Theriot, a 48 year old deckhand and relief captain, got his left leg entangled in barge wires in an inspection hatch while attempting to make up tow.  The injury resulted in a traumatic below the knee amputation a few days later.  Plaintiff claimed future wage loss of $220,000 and future medical costs of $300,000.  His case was settled for a total of $1,961,000.  Given that there was no maintenance and cure claim, the remaining $1,441,000 was in **settlement** of plaintiff's general damages claim.

3.    *Simeon v. T. Smith & Son, Inc.*, **852 F.2d 1241 (5th Cir. 1988), rehearing denied en banc, 860 F.2d 1255 (5th Cir. 1988), cert denied, 109 S. Ct. 3156 (1989).**

Plaintiff Simeon, a derrick barge deckhand, nearly lost his foot in a mooring line incident. He underwent a "series" of surgical operations and two (2) months of hospitalization to save his foot.

Thereafter, he had to use a cane to walk and could only walk short distances.  He became "gloomy and depressed."

The $1,250,000 pain and suffering jury award against the Jones Act employer was remitted to $600,000, and the $450,000 pain and suffering award against a third party tugboat owner was upheld.  This total damage award of $1,050,000 is equivalent to $1,922,769 today.  Utilizing the 50% multiplier, the maximum award for this type of injury expressed in 2008 dollars in the U. S. Fifth Circuit in a Jones Act is $2,884,153.50.

**4.    *Willett v. Western Oceanic, Inc.*, 117 F.R.D. 379 (E.D. La. 1987).**

Plaintiff Willett suffered two (2) broken wrists and a cervical fracture.  The jury awarded him $1.5 million in general damages in his Jones Act case.  U. S. District Judge Peter Beer applied the maximum recovery rule and ordered a remittitur in the amount of $600,000, thereby reducing the jury verdict to $900,000.  The remitted amount is equal to $1,716,274.65 in 2008 dollars.  Applying the 50% multiplier, the general damage award totals $2,589,413 in 2008 dollars.

**5.    Gough v. Natural Gas Pipeline Co., F.2d 763 (5ᵗʰ Cir. 1993).**

Plaintiff Capt. Gough was at the helm of a vessel involved in an explosion offshore.  Although he was not physically hurt, he suffered from post-traumatic stress disorder that his doctors opined would take two (2) to three (3) years to bring under control.  The disorder was not totally disabling, as plaintiff was working as a carpenter at the time of trial.  In this mental pain and anguish case, the general damage award of $1,444,599 was reduced to $600,000 as the maximum reasonable award for emotional distress.  This award is equivalent to $892,000 in 2008 dollars.  The 50% multiplier brings the **maximum emotional distress award** to $1,338,000 in 2008 dollars.

Plaintiff respectfully suggests that, to the extent any cases can assist in this endeavor, the

above cases provide greater guidance to this Honorable Court then those cited by Diamond.  Both involve Jones Act seamen whose cases were adjudicated in this judicial district.  Although the *May* case involves a different injury mechanism (albeit by an apparently similar piece of rig floor equipment), the end result was the same—an essentially useless upper extremity that prevented Mr. May from returning to work offshore.  Although *Theriot* involved a partial lower extremity amputation, the physical and mental pain and suffering, disfigurement and disability that Mr. Thornton endures is quite similar to that of Mr. Theriot.  In fact, this plaintiff's injury may be worse—at least Mr. Theriot can function with a prosthesis.  Mr. Thornton has to live with his scarred feeble left arm and all of the ongoing physical and mental issues that came with it.  The remaining cases provide a framework from the relevant jurisdiction with which to analyze Mr. Thornton's physical pain and mental distress award.

Conversely, defendants' authorities offer little assistance in the Court's quantum analysis, as they are not reflective of similar injuries arising within the jurisdiction of the U. S. Fifth Circuit.  Review of the cases reveals the following:

1.   ***Rivere v. Union Pacific R. Co.*, 647 So.2d 1140 (La. App. 1ˢᵗ Cir. 1994), writ denied, 651 So. 2d 295 (La. 1995)**.

This is a Louisiana state court case not within the jurisdiction of the federal fifth circuit.  The case is fourteen (14) years old.  There is no description of plaintiff's specific injuries or the mechanism of said injuries.  Indeed, the only reference to the injuries is the following: "The Court finds according to the detailed, accurate account of the medical evidence in plaintiff's post trial memo on pages 41-48."   647 So.2d at 1150.

The only potential useful information is:

> Mr. Rivere underwent 7 operative procedures under general anesthetic. He was completely unable to use his arm or hand for almost 3 months, and was unable to feed, bathe or clean himself during this time, reducing him to humiliating dependence. He has been left with permanent partial disabilities that have affected his lifestyle significantly. His schooling was interrupted. He has been unable to find a job after many months. 647 So.2d at 1151.

The fact that this plaintiff underwent seven (7) unknown surgical procedures, could not use his hand for three (3) months and has been left with unquantified disabilities is insufficient. Mr. Thornton suffered a painful crush injury that literally torn the skin from his forearm down to the bone, muscles, tendons and ligaments, all of which were visible according to Dr. Dupin. His surgeries included multiple debridements of dead muscle and tissue and a skin graft. He has been left with a thirty-seven (37%) percent disability and a permanent inability to dress himself and tie his shoes, limitations characterized by the *Rivere* court as "humiliating dependence."

Further, *Rivere* was 22 years old and in school when he was hurt. Mr. Thornton had been an oilfield worker for sixteen (16) years responsible for supporting his wife and two (2) teenage daughters. The jury in this case was instructed to consider ". . . mental anguish and feelings of economic insecurity caused by disability. . ." in assessing Mr. Thornton's damages. Under the circumstances, Mr. Thornton's mental pain and suffering are much greater, as are his damages for residual severe scarring and disfigurement not present in *Rivere*. Indeed, there is no discussion of mental anguish damages in *Rivere*.

**2.    *Riser v. Acadiana Limousine Service, Inc.*, 693 So. 2d 330 (La. App. 3rd Cir. 1997), writ denied 701 So.2d 173 (La. 1997).**

This is a Louisiana state court case not within the jurisdiction of the federal fifth circuit. The case is eleven (11) years old. Mr. Riser suffered injuries to his left arm, wrist and hand, but the

specific mechanism of injury (i.e., crush) is unknown.  Riser suffered fractures in his forearm and wrist, one of which was surgically repaired.  His median nerve and tendon lacerations were surgically repaired.  He underwent extensive physical therapy and was left with permanent pain, and sensory and motor loss.  There is no evidence of the extent of disfigurement, residual disability or mental anguish.

Contrast this to Mr. Thornton, who had the skin ripped from his hand and underwent eight (8) surgical procedures.  He has a non-functioning left thumb due to permanent injury to both thumb joints.  He had numerous debridements, a skin flap surgery and skin grafted from his hip. Mr. Thornton's disfigurement extends over his entire left forearm.  Unlike *Riser*, Mr. Thornton suffers from life-long depression requiring medication.  He lost the ability to continue his long and prosperous oilfield career, whereas *Riser* suffered no vocational disability or wage loss. Mr. Thornton's "mental anguish and feelings of economic insecurity" are far greater than that of Riser, who suffered no such loss.

**3.**   ***Wilcox v. Kerr-McGee Corporation*, 706 F. Supp. 1258 (E.D. La. 1989).**

Although within the relevant jurisdiction, this case is nineteen (19) years old and of little or no value in assessing contemporary general damages.

Further, Wilcox' injury pales in comparison to Mr. Thornton.  Wilcox essentially suffered wrist injury caused by repetitive rotational forces to the wrist.  The injuries included various cartilage defects that were addressed in a series of arthroscopic surgeries.  He was left with at 25% disability to the wrist, for which he received $100,000.  He also received $50,000 for physical pain and suffering and $50,000 for mental anguish.  There was no evidence of severe or acute pain from a crush, no residual scarring or disfigurement and little mental anguish evidence.

-14-

Plaintiff need not again contrast his factual damage supports.  The Wilcox case is simply not a case involving similar injuries as applicable law requires.  It cannot be considered.

4.    ***Cooper v. Louisiana State Department of Transportation and Development, et al*, 885 So.2d 1211 (La. App. 1ˢᵗ Cir. 2004), writ denied 885 So.2d 1142 (La. 2004).**

This is a Louisiana state court case not within the jurisdiction of the federal fifth circuit.  Plaintiff *Cooper* was found seventy-five (75%) percent at fault in causing her one car accident.  The jury, clearly taking her conduct into account, awarded $87,000 in total damages, including $17,500 in general damages for a head injury, facial laceration, crushed left ulnar bone, open left radius fracture and significant abrasion or burn of the distal third of her forearm.

The court therefore had to increase the award to "the lowest general damages award that they jury could have reasonably awarded."  885 so.2d at 1218.  The court awarded $70,000 for physical and mental pain and suffering and $85,000 for disability and disfigurement.

With respect, this case is wholly irrelevant to Mr. Thornton's case.  Diamond seeks a remittitur, not an additur.  The lowest reasonable amount in a state court case provides this Court with no guidance whatsoever in a federal court case where the highest reasonable award is the issue raised by Diamond.  Suggesting that Mr. Thornton's reasonable general damages total $155,000 is absurd on its face.

5.    ***Fontana v. Coco-Cola Enterprises, Inc., et al*, 632 So.2d 811, 93-1003, (La. App. 4ᵗʰ Cir. 2/11/94).**

This is a Louisiana state court case not within the jurisdiction of the federal fifth circuit.  The case is fourteen (14) years old.

Although plaintiff suffered a right hand crush, it caused only fractures and ligamentous injuries.  He initially wore a cast and ultimately had two surgeries: carpal tunnel repair and ulnar

nerve surgery, both of which are typically arthroscopic and done outpatient.  Fontana was discharged with a ten (10%) percent right arm impairment but no functional impairment of the hand.  Obviously the hand crush was not severe.

This case does not involve similar injuries to those of Mr. Thornton.  In fact, it does not involve any injuries suffered by Mr. Thornton.  It is useless in determining the highest reasonable award in this case.

**6.**     ***Holloway v. Midland Risk Insurance Company*, 832 So.2d 1004, 36,262 (La. App. 2nd Cir. 10/30/02)**

This is a Louisiana state court case not within the jurisdiction of the federal fifth circuit.

Holloway suffered a severe right hand injury when a high-pressure hydraulic hose that he was holding ruptured.  He underwent three (3) surgeries; emergency surgery on the date of the accident to remove damaged tissue and drain hydraulic fluid, a second surgery two (2) days later to remove damaged tissue, and a third surgery shortly thereafter to remove additional damaged tissue and close all wounds.  He participated in physical therapy and returned to his regular (heavy) duty as a fireman five (5) months after the injury.  Holloway developed swelling and underwent another surgical procedure to drain hand abscesses three (3) months after he returned to work.  He again returned to regular (heavy) duty two (2) months later.

Although Holloway's right hand was permanently scarred and impaired, and his function and range of motion were permanently reduced, there is no evidence of the extent of scarring or impairment.  In any event, it was not enough to prevent his return to work as a firefighter.

Again, the differences between Holloway's injuries and recovery and those of Mr. Thornton are legion.  A severe crushing and a avulsion injury to the left forearm and hand versus a pressure

injury to the hand only, eight (8) surgeries versus three (3), unknown scarring and impairment versus significant scarring and thirty-eight (38%) percent impairment of the hand and forearm (including a non-functioning left thumb) and significant mental anguish versus no evidence of mental distress damages in *Holloway*.

7.   ***Thompson v. Louisiana University Medical Center in Shreveport, et al*, 772 So.2d 306, 34,086 (La. App. 2nd Cir. 11/1/00).**

This is a Louisiana state court case not within the jurisdiction of the federal fifth circuit.  The case is eight (8) years old.

Plaintiff was a four (4) year old victim of medical malpractice.  She underwent four (4) surgeries to address an undiagnosed fracture of the radius resulting in a radial dislocation.  Plaintiff lost 20 degrees of flexion, 50 degrees of supination and 70 degrees of pronation of the wrist and was assigned a sixteen (16%) percent impairment of the upper extremity.  She was left with an undescribed scar.  Her first and second grade teachers testified that the injured child did not have difficulty in classes, they never noticed a problem with her arm and that she had excellent handwriting when given more time to write.

Like the *Holloway* plaintiff, Thompson underwent less than half of the surgeries and was assessed less than half of the functional disability than Mr. Thornton.  Thompson had a scar, versus a large avulsion injury requiring a skin flap and subsequent skin graft.  Thompson did not undergo lengthy painful physical therapy.  Further, as a result of her young age, Thompson's mental distress did not approach that of Mr. Thornton, who suddenly lost his ability to financially care for his wife and teenage daughters.  The proof of the difference is the fact that the Thompson child was awarded $160,000 in general damages, a figure that would be considered obscenely low in this case.

8.      *Robertson v. Superior PMI, Inc.*, 791 F.2d 402 (5th Cir. 1986).

This case is twenty-two (22) years old.  Even if it were applicable, a $400,000 award in 1986 is equivalent to a $791,245 award today.  With the fifty (50%) percent multiplier, this award totals $1,186,876.50, far greater than the other cases cited by the defendants but too low in the Thornton case.

With due respect, an editorial footnote comment by an appeal court judge on an issue not raised at the trial court is wholly irrelevant to the issue before Your Honor.

D.      <u>New trial on wages inappropriate.</u>

Amazingly, Diamond also argues that the jury's decision to award the economic loss figure posited by plaintiff's expert economist was not supported by record evidence.  According to Diamond, there are no probative facts that would allow a reasonable jury to conclude that plaintiff is unable to secure employment for any position for the rest of his working life.  With respect, this is simply incorrect.

As pointed out, Dr. Cenac testified that the physician alone does not decide whether a person can return to work.  The physician assesses physical abilities and turns this information over to the vocationalist.  The mere fact that Mr. Thornton has limited use of his left arm and hand is but one piece of the vocational puzzle.  Plaintiff previously quoted Ms. Favaloro's testimony that, in her opinion, plaintiff is vocationally disabled.  The test is not whether a job may be available in the area of his home; the question is whether plaintiff, by virtue of his age, education, experience and physical and mental limitations is able to obtain and hold a job reasonably close to his home.  There is absolutely no record testimony identifying a job for which plaintiff is qualified in light of the considerations stated herein.  Indeed, Mr. Thornton testified that he applied for a number of jobs and

-18-

was ignored.

This jury rationally concluded from this testimony that Mr. Thornton is vocationally disabled. Diamond's reference to its vocational expert, Todd Capielano, is meaningless because the jury rejected Mr. Capielano's expert opinions in favor of those of Ms. Favaloro. The rejection of one expert in favor of another is not a ground for new trial, as this would violate the great deference accorded to jury findings.

There is simply no reason for this Honorable Court to do any violence to the jury's award of economic loss damages. It is based on factual and expert testimony which may not be agreeable to Diamond but is more than sufficient to support this award.

## CONCLUSION

Although Diamond raises a number of issues in its new trial motion, the gravamen of its motion is the jury's $2.5 million general damage award. Plaintiff respectfully avers that the award neither shocks the conscience so as to require a new trial on damages, nor is it so excessive as to warrant a remittitur. The verdict is consistent with the weight of the evidence. It simply does not point so strongly and overwhelmingly in favor of Diamond that a reasonable jury could not arrive at a contrary conclusion. A new trial is not warranted.

Remittitur is appropriate only upon a clear showing of excessiveness or that the jury was influenced by passion or prejudice. A verdict is excessive if it is contrary to right reason or entirely disproportionate to the injuries sustained.

The general damage award is not so large that the interests of justice require a reduction. Indeed, the award does not exceed any rational appraisal or estimate of the damages based upon the evidence at trial. Mr. Thornton has suffered and will continue to suffer greatly, both physically and

-19-

mentally.  The jury verdict appropriately compensates him for his losses under the facts of his case.

It may be generous, but is not so extravagant as to shock the judicial conscience.

With respect, the relief sought by defendants is not supported in law or fact.  The motion

should be denied.

Respectfully submitted,


/s/ Paul M. Sterbcow
PAUL M. STERBCOW (#17817)
Lewis, Kullman, Sterbcow & Abramson
601 Poydras Street, Suite 2615
New Orleans, LA 70130
(504) 588-1500
sterbcow@lksalaw.com



## CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2008 a notice of electronic filing was forwarded to the
following:  T. Patrick Baynham, tpbaynham@baynhambest.com.

/s/ Paul M. Sterbcow
PAUL M. STERBCOW (#17817)
Lewis, Kullman, Sterbcow & Abramson
601 Poydras Street, Suite 2615
New Orleans, LA 70130
(504) 588-1500
sterbcow@lksalaw.com