UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RONNIE J. THORNTON                        CIVIL ACTION

VERSUS                                    NO: 07-1839

DIAMOND OFFSHORE DRILLING,                SECTION: R(1)
INC.

## ORDER AND REASONS

Before the Court are Diamond Offshore Management Company's
and Diamond Offshore Services Company's motions for a new trial
or remittitur.  For the reasons set forth below, the Court DENIES
both the motion for a new trial and for remittitur.

## I.    PROCEDURAL AND FACTUAL BACKGROUND

This case arises out of an industrial accident that occurred
on an offshore drilling rig.  Plaintiff Ronnie Thornton was
employed as a derrickman by defendant Diamond Offshore Management
Company aboard the J/U OCEAN DRAKE, a rig owned and operated by
co-defendant and affiliated corporation, Diamond Offshore

Services Company.  (The Court refers to both defendants collectively as "Diamond.")  On April 7, 2006, plaintiff Ronnie Thornton attempted to correct the position of a chain on a malfunctioning hydraulic wrench when he mistakenly pressed a wrong lever, causing the wrench jaws to close around his left arm and crush the bones in his hand and forearm.  Plaintiff suffered severe and permanently disabling injuries.  He was hospitalized for eleven days.  He underwent numerous surgeries to correct the damage.  Plaintiff also commuted 70 miles to Mobile, Alabama for close to 100 physical therapy sessions.  He has been unable to return to work on the oil rig and has not found a job elsewhere. As a result of his inability to work, plaintiff suffers ongoing depression.  Plaintiff sued Diamond under the Jones Act and general maritime law.  In closing argument, plaintiff's attorney asked for a damage award of $1,904,000.

After a trial on the merits, conducted over a four-day period from May 19 to May 22, 2008, the Court submitted the case to the jury.  The jury returned a verdict for the plaintiff and found that the plaintiff was 10 percent comparatively at fault in causing his accident and injuries.  The jury awarded Thornton a general damage award of $2,500,000.00 and a future wage loss award of $563,343.00.  The Clerk entered Judgment on May 30, 2008.  Diamond then brought this motion for a new trial or

alternatively, for remittitur.

## II.  LEGAL STANDARDS

### A.  New Trial

Federal Rule of Civil Procedure 59 provides that the Court may grant a new trial "for any of the reasons" for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. Proc. 59.  Therefore, the Court may grant a new trial if it finds that the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course.  *See Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985).  A new trial, rather than remittitur, is the proper remedy when a jury verdict results from passion or prejudice.  *Westbrook v. General Tire and Rubber Company*, 754 F.2d 1233, 1241 (5th Cir. 1985).

### B.  Remittitur

Rule 59 also allows a party to seek an alteration or amendment of a damage award if the jury's judgment was excessive. *See* Fed. R. Civ. P. 59.  The Fifth Circuit recently clarified the standard for remittitur.  *See Foradori v. Harris*, 523 F.3d 477, 503 (5th Cir. 2008).  A court should not disturb a jury verdict

except on "the strongest of showings." *Foradori,* 523 F.3d at 504
(citing *Lebron v. United States*, 279 F.3d 321, 325 (5th Cir.
2002)).  Since the size of the award a plaintiff is entitled to
receive is generally a question of fact, a court should be
"exceedingly hesitant" to overturn the decision of the jury.
*Foradori*, 523 F.3d at 504 (citing *Shows v. Jamison Bedding*, 671
F.2d 927, 934 (5th Cir. 1982)).  Remittitur is not appropriate
unless the jury's award shocks the judicial conscience.
*Foradori*, 523 F.3d at 504 (citing *Caldarera v. Eastern Airlines*,
705 F.2d 778, 784 (5th Cir. 1983)).  Remittitur may be
appropriate under the "maximum recovery rule" if the award is
disproportionate to all factually similar cases.  *Lebron v.
United States*, 279 F.3d 321, 326 (5th Cir. 2002).


## III. DISCUSSION

### A.   Weight of the evidence

#### 1.   Comparative negligence

Diamond first contends that a new trial on liability is
warranted since the jury's finding of 10 percent comparative
negligence is against the great weight of the evidence.  Diamond
notes that plaintiff admitted the accident would not have
occurred if he had not pushed the wrong lever.  As such, Diamond

4

avers that plaintiff should have been assigned more than 10 percent comparative fault.

The Court finds that there was ample evidence to support a finding that plaintiff was only 10 percent at fault.  As Thornton's employer, Diamond had overriding responsibility to fix the broken wrench and provide a seaworthy vessel.  Instead, it left plaintiff to effect makeshift repairs of the wrench and failed to train him on how to fix it safely.  The wrench had been malfunctioning for a lengthy period of time leading up to the accident.  The wrench itself was a piece of backup equipment and was in use only because the preferred equipment, an iron roughneck, was broken and unavailable.  Plaintiff's supervisor Johnnie Williamson testified that the problem with the chain on the wrench could have been prevented by fixing the wrench's motor.  Williamson's testimony indicated that a proper repair would have taken only forty-five minutes.  He testified that a mechanic, not Thornton, had the responsibility to fix the motor. Williamson also testified that had the motor been repaired, employees would not have to fix the chain manually.

Both Williamson and defendants' safety superintendent, Timothy Taylor, testified that plaintiff was not to blame for the accident.  And further, Diamond's own post-incident investigation report suggests that Diamond, not plaintiff, was at fault.

Diamond's investigation revealed, *inter alia*, that the control levers on the broken wrench were not marked and only one inch apart. (Plaintiff's Trial Exhibit 18).  Additionally, in the section of the report entitled "Why the Incident Occurred," the report acknowledged that the accident happened because the Spinner Hawk was not "isolated" for repair as it should have been.  Rather, the "culture aboard" the vessel permitted the employees to fix the chain manually.  The report found that the employees were not aware of the hazard.  The section did not cast any blame on the plaintiff for the accident.

The record indicates that Thornton's supervisors were aware that the wrench had been malfunctioning for some time and that employees were repairing the wrench in the manner used by Thornton.  Yet Diamond did not undertake any responsive measures. The defect was never repaired, and Diamond did not instruct its employees on the proper procedure for repairing the wrench. Plaintiff testified that he never saw a Job Safety Analysis regarding the wrench.  He testified that he learned how to use the wrench from his supervisor and on the floor.  Floorhand Tyler Pittmann testified that he had used the same method to fix the wrench as plaintiff did on numerous occasions.  Williamson also testified that other workers routinely fixed the wrench by manually manipulating the chain.  Williamson knew that a safer

method, using a two by four, could have been employed to fix the wrench.  He stated, however, that no one used that method or discussed using that method.

Since Diamond had the responsibility both to fix the motor of the wrench and ensure that its employees were trained to use it safely, and it had substantial notice that the wrench was broken and that employees were adjusting the chain manually, the Court holds that a finding that plaintiff was only 10 percent comparatively negligent is not against the great weight of the evidence.

### 2.   Lost future earnings

Diamond contends that the Court should grant a new trial on damages since there was insufficient evidence to support the jury verdict as to future wage losses.  The jury awarded plaintiff $563,343.00 in lost future earnings.  This figure was the exact amount of economic loss calculated by plaintiff's expert economist.  The figure was calculated under the assumption that plaintiff is totally and permanently disabled and could not return to employment.  Diamond asserts that the jury's finding that plaintiff could not return to employment is against the great weight of the evidence.

The Court finds that there was sufficient evidence to support a finding that plaintiff could never return to gainful

employment.  Plaintiff's physical, psychological, educational, and geographical limitations seriously restrict his ability to find work.  Plaintiff is unable to do the manual labor he previously performed.  Further, he had no experience doing anything other than manual labor.  In addition, his ability to concentrate is impaired by the medications he takes for depression.

Plaintiff is further restricted by his tenth-grade education and limited academic capability.  The jury could have reasonably concluded from plaintiff's testimony and the other evidence that his communication skills are extremely limited.  His wife testified that he could not balance the family checkbook and was unsuccessful at earlier efforts to get a GED.  The jobs available to plaintiff are limited since he lives in a small town of 200 people in rural Alabama.  The nearest city has 4,000 residents. Based on the foregoing factors, plaintiff's vocational rehabilitation expert Nancy Favaloro testified that plaintiff was vocationally disabled.  She concluded that any job he could perform would be very difficult to find reasonably close to home, and that he would have difficulty keeping a job because of his inability to concentrate as a result of his medications. Plaintiff and Favaloro also testified that plaintiff had applied for numerous positions but had not received any job offers.

8

Given this testimony, a jury could rationally conclude that plaintiff will be unable permanently to secure employment.

**B.   Passion or prejudice**

Diamond next contends that a new trial is warranted since the jury verdict was improperly influenced by passion or prejudice.  Diamond has not provided any evidence to show passion or prejudice.  Diamond asserts that the excessiveness of the verdict itself is sufficient to show passion or prejudice.  Indeed, the excessiveness of a verdict can be indicative of passion or prejudice. *See Wells v. Dallas Indep. School Dist.*, 793 F.2d 679, 683-84 (5th Cir. 1986).  The Court, however, finds that the verdict was reasonable given the evidence at trial.  Thornton suffered a disfiguring injury that has left him unable to secure permanent employment.  His recovery was long and painful.  He underwent eight surgeries and commuted 140 miles round trip for about 100 physical therapy sessions.  Thornton remains both physically and psychologically scarred from the accident.  His arm and hand are almost useless to him.  He can no longer button his shirt or tie his shoes without assistance, and he will need this assistance for the rest of his life.  Further, he still takes medication for pain.  Because of the accident, Thornton became depressed and remains on antidepressive medication.  As his wife's testimony revealed, plaintiff very

much wanted to go back to work, and his inability to work has caused him significant emotional trauma, particularly because he had been a conscientious provider for his family.

The Court finds that the jury's award of $2.5 million in general damages is not excessive. While the award is higher than the amount for which plaintiffs requested, defendant Diamond has not provided any evidence that the verdict was influenced by passion or prejudice. As such, a new trial is not warranted.

C.   **Remittitur**

The Court does not find that the jury's award warrants a remittitur. Defendants have not proved by the "strongest of showings" that the award should be overturned. The jury's award also does not "shock the judicial conscience." As discussed above, the jury could have reasonably based its award on the facts and testimony presented.

Additionally, the Court finds that the maximum recovery rule is not implicated in this case. When a review of the caselaw reveals that there is no factually similar case in the relevant jurisdiction, the maximum recovery rule does not apply. *Foradori*, 523 F.3d at 505 (quoting *Vogler v. Blackmore*, 352 F.3d 150, 158 (5th Cir. 2003)). Defendant Diamond has not provided any factually similar cases in the relevant jurisdiction. Many of the cases Diamond relies on are over ten years old and all involve

10

injuries that were less severe and disabling, mentally and physically. *E.g. Rivere v. Union Pac. R. Co.*, 647 So. 2d 1140 (La. App. 1st Cir. 1994) (injury left plaintiff unable to use his left arm for only three months); *Riser v. Acadiana Limousine Serv., Inc.*, 693 So. 2d 330 (La. Ct. App. 1997) (plaintiff suffered a wrist injury but no depression or job loss); *Cooper v. Louisiana State Dep't of Transp. and Dev.*, 885 So. 2d 1211 (La. Ct. App. 2004) (plaintiff, a recent high school graduate, suffered an arm injury in a car accident but no depression or job loss); *Fontana v. Coca-Cola Enter., Inc.*, 632 So. 2d 811 (La. Ct. App. 1994) (plaintiff's hand injury led to carpal tunnel syndrome); *Holloway v. Midland Risk Ins. Co.*, 832 So. 2d 1004 (La. Ct. App. 2002) (plaintiff suffered a hand injury but was able to continue work as a firefighter); *Thompson v. Louisiana Univ. Med. Ctr. in Shreveport,* 772 So. 2d 306 (La. Ct. App. 2000) (plaintiff, a four year-old, underwent only four surgeries and suffered a 16 percent impairment of her upper arm); *Robertson v. Superior PMI, Inc.*, 791 F.2d 402 (5th Cir. 1986) (plaintiff suffered a hand injury).

For example, in *Wilcox v. Kerr-McGee Corporation*, 706 F. Supp. 1258 (E.D. La. 1989) the plaintiff, a driller on an offshore rig, suffered a wrist injury because of the continual malfunctioning of the driller's brake handle.  He underwent five surgeries, but his pain was largely resolved.  While he could not

continue working offshore, there was no allegation that he could no longer find permanent employment.  In contrast, Thornton's injury is much more severe.  His entire left arm was mangled in a traumatic accident.  After eight surgeries and about 100 physical therapy sessions, he was still left with no meaningful use of his arm.  His injury was further compounded by his depression and his inability to find permanent employment.  Thus these cases are not sufficiently factually similar to merit the use of the maximum recovery rule.

Since there are no factually similar reported cases in the relevant jurisdiction, the Court declines to invoke the maximum recovery rule.

## IV.   CONCLUSION

For the foregoing reasons, the motion for a new trial is DENIED.  The motion for remittitur is also DENIED.

New Orleans, Louisiana, this <u>30th</u> day of June, 2008.

_Sarah Vance_
_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE